

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 00-6311-CR-HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

VS.

CLARENCE LARK, Et Al.

    Defendants
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT LARK'S MOTIONS TO STRIKE SURPLUSAGE

Comes now the United States, and hereby files its response to the Defendant Lark's motion to strike surplusage from the indictment.

I <u>Introduction and Nature of The RICO Charge</u>

Defendant Lark seeks to strike as surplusage various allegation in Count one of the Indictment which charges that Lark conspired to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(d). The gist of the RICO charge is that Lark operated Teamsters Local 390, of which he was the President, as a Racketeering Enterprise. He used his position as the President of Teamsters Local 390 to enrich himself through a variety of illegal activities, including drug trafficking and extortion of union members.

During a portion of the time that Lark was President of

Teamsters Local 390, he was under investigation by the Independent Review Board (IRB). The IRB was established by court order to police the internal activities of the Teamsters Union. In order to preserve his source of illegal income, Lark and others made false and misleading statements to the IRB concerning various illegal activities he was conducting. These false statements included statements about Lark's involvement in Star's Choice, which was responsible for leasing trucks to movie and television production companies to which Teamster Local 390 supplied labor.

Thus, the IRB's investigation and Lark's false statement constitute an inseparable part of the RICO violation charged in the indictment. The IRB ordered Lark removed as President of Teamsters Local 390 and barred Lark from the Teamsters Union for life. However, in direct contravention of this order, Lark remained in <u>de facto</u> control of Teamsters Local 390 in order to provide for himself a continuing source of illegal payments of drug money by fellow teamster member and drug smuggler Willie Jackson. All these acts comprise the RICO charge against Defendant Lark.

II <u>Lark's Motion to Strike Surplusage is Not Well Founded</u>

Motions to strike claimed surplusage from an indictment are reviewed under well established legal standards. "A motion to strike surplusage should not be granted unless it is clear that

the allegations are not relevant to the charge and are inflammatory and prejudicial...This is a most exacting standard." United States v. Awan, 966 F. 2d 1415, 1426 (11th Cir. 1992)(quotations and citations omitted); United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990). This is particularly true in prosecutions brought under the broad and far reaching provisions of the RICO statute, which allows for a detailed description of the criminal enterprise in the indictment. See, e.g., United States v. Eisenberg, 773 F.Supp. 662, 698-701 (D.N.J. 1991); United States v. Gatto, 746 F.Supp. 432, 455-456 (D.N.J. 1990); United States v. Giovanelli, 747 F.Supp. 875, 888-889 (S.D.N.Y. 1989); United States v. Santoro, 647 F.Supp. 153, 176-177 (E.D.N.Y. 1986).

In applying these principles to the case before the Court, it is clear that Lark's motion to strike is not well founded. All the complained of language simply describes the nature of the illegal racketeering enterprise operated by Defendant Lark. The allegations set forth the nature of the illegal activities and thus place the defendant on notice as to the nature and scope of the illegal activities undertaken by members of the enterprise. The United States will address the complaints of the Lark seriatim.

Defendant moves to strike the following allegation from the Indictment:

3

### a. General Allegations, Paragraph 8

> The Independent Review Board (IRB) was established by court order in accordance with a consent order entered in <u>United States v. IBT,</u> 88 CIV. 4486 (S.D.N.Y.) to review the activities of the International Brotherhood of Teamsters. On September 16, 1996, the International Brotherhood of Teamsters, with the approval of the IRB, permanently barred defendant LARK from holding office with any International Brotherhood of Teamsters entity, paid or unpaid, having membership in Local 390 and any other International Brotherhood of Teamsters entity, or from receiving any compensation or benefits from any International Brotherhood of Teamsters entity other than fully vested benefits.

This paragraph is relevant to the RICO prosecution because the RICO charge asserts that Lark remained in <u>de facto</u> control of the union after his removal in order to continue to enrich himself through, among other things, the collection of illegal money from Willie Jackson that was derived from the sale of narcotics. (Count 1, Manner and Means of the RICO conspiracy, Paragraph 13). The reference to the IRB is relevant because the indictment charges that Lark made false statements to the IRB in an effort to maintain <u>de jure</u> control of local 390. (Count I, Manner and Means of the RICO conspiracy, Paragraph 12). Defendant essentially wants to edit the indictment so as to eliminate a portion of the charged enterprise. Under the well settled case law set forth above, Defendant's motion should be denied.

### b. General Allegation, Paragraph 9

> Following his removal as Union President and banishment from the Teamsters Union, however, defendant LARK continued to participate in the management of Teamsters Local 390 and exercise influence over the leadership of the Local 390.

This allegation is relevant because it describes how Lark continued to operate Teamsters Local 390 after he was removed as President of the Union.  This is the manner and means by which Lark illegally continued to exercise influence over the union in order to further his illegal activities.  This is an integral part of the operation of the RICO enterprise.  Furthermore, Lark's suggestion that the indictment be reworded is a without precedent; a criminal defendant is not entitled to frame the charge on which he wishes to be tried--that responsibility rests with the grand jury and not the defendant.

### c. General Allegations, Paragraph 10

> Defendant LARK was a silent partner in, and exercised control over, Star's Choice, Inc. (Star's Choice).  Star's Choice was a Florida corporation that rented vehicles to the movie and television industry.  Teamsters Local 390, under the control of defendant LARK, supplied the drivers for the trucks rented by Star's Choice to movie and television production companies located in South Florida.

This is relevant to the RICO charge in that part of the corrupt manner by which Lark operated Teamsters Local 390 was to maintain a silent interest in Star's Choice which leased vehicles to television and movie production companies. The terms of these leases were negotiated by the transportation captains for the

5

movie companies, who were teamster members under the control of Lark. Thus Lark, through his silent interest in Star's Choice, was essentially negotiating the leasing of these vehicles with himself. (Count I, Manner and Means of the RICO conspiracy, Paragraph 11). In addition, Lark's silent interest in Star's Choice is relevant to the laundering of drug money through Star's Choice that was conducted by Lark and others. The motion to strike should be denied.

### d. Count 1, Manner and Means of the RICO, Paragraph 7

> It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would violate their duties of honesty and trust that they owed to the rank and file members of Teamsters Local 390 in order to generate illegal income for themselves and the other members of the conspiracy.

This paragraph is relevant in that the RICO count charges that Lark violated his duty of loyalty to union members by extorting them, accepting bribe payments from certain select members in order to further their drug trafficking and negotiating with himself concerning the leasing of vehicles from Star's Choice. This, along with the drug trafficking, is the very heart of the RICO charge. The motion to strike should be denied.

### e. Count 1, Manner and Means of the RICO, Paragraph 9

> It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would abuse their responsibilities as officers of Teamsters Local 390 by facilitating the smuggling of over 3,500 kilograms

of cocaine and over 39,000 kilograms of marijuana through Port Everglades in exchange for substantial bribes from drug smugglers.

Lark asserts that the reference to the abuse of the defendant's position as a Teamsters officer should be stricken. This, again, is the heart of the RICO charge. The RICO charge asserts that Lark conducted the affairs of Teamsters Local 390 through a pattern of Racketeering activity involving drug trafficking and extortion. Thus, the manner by which the crime was even possible was through Lark's abuse of the position entrusted to him by his fellow Teamsters. This allegation should remain in the indictment and the motion to strike should be denied.

### f. Count 1, Manner and Means of the RICO, Paragraphs 11-13

11. It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would abuse their positions of trust as union leaders of Teamsters local 390 by having interests in Star's Choice, while simultaneously controlling Union officials responsible for negotiating contracts involving the renting of vehicles from Star's Choice, thereby creating and profiting from a conflict of interest at the expense of Teamsters Local 390 members.

12. It was further part of the conspiracy that defendants CLARENCE LARK and other conspirators would, for the purpose of maintaining their positions as union officials and their relationship with Willie Jackson's drug organization, make, and cause to be made, false and misleading statements concerning the administration of Teamsters Local 390 during an investigation conducted by IRB.

13. It was further part of the conspiracy that defendant CLARENCE LARK would continue to maintain and exercise influence over the operation of Teamsters Local

      390, even after the IRB removed him as Teamster Local 390 President, in order to continue to maintain for himself, defendant CRENSHAW and other conspirators a source of illegal income from narcotics trafficking and extortion.

These allegations all center on Lark's relationship with Star's Choice and the investigation of that relationship being conducted by the IRB. It is the government's position that Lark's conflict of interest involving his silent partnership in Star's Choice is part of the criminal activity engaged in by Lark as President of Teamsters Local 390. In addition, in order to maintain his source of illegal drug payments from Willie Jackson, Lark lied, and caused others to lie, to the IRB concerning his relationship with Star's Choice and his demand for extortion payments from teamster members who worked on movie sets. These false statements were designed to deceive the IRB and allow Lark to remain in *de jure* control of Teamsters Local 390. As President of Teamsters Local 390 Lark was in a position to protect the drug trafficking activities of Willie Jackson, in exchange for drug money provided by Willie Jackson to Lark. Lark, in turn, would use the illegal drug money to, among other things, finance Star's Choice. Thus all the allegations in these paragraphs are relevant in that they describe the criminal activity undertaken by Lark. The motion to strike should be denied.

g. Count 1, Manner and Means of the RICO, Paragraph 14

> 14. It was further part of the conspiracy that the defendants and other conspirators would rig various union elections in order to establish, maintain and further their influence over the leadership of Teamsters Local 390, so that members of the conspiracy would continue to profit from their illegal activities.

This paragraph is relevant because it too describes the criminal activity undertaken by Lark as President of the Teamsters Local 390. Lark used his position as President to help rig union elections in order to maintain his own power and source of influence over the Union. This was undertaken so that Lark could, among other things, continue to receive drug money payments from Willie Jackson. The motion to strike should be denied.

h. Count 1 Manner and Means of the RICO, Paragraph 15

> It was further part of the conspiracy that the defendants would endeavor to form a corrupt relationship with managers and employees of Crowley in order to obtain information about on-going criminal investigations and otherwise further the illegal activities of the enterprise.

Lark complains of the use of the word "corrupt" which he wishes to be removed from the indictment. The relevance of the allegation is clear in that Lark sought to obtain information about the government's on going investigation into drug trafficking through Port Everglades. An effort to secure information, that had been shared with certain officials of the maritime shipping company Crowley in order not to compromise the

covert nature of the investigation, was clearly corrupt in that it was designed to thwart the investigation. Thus, this allegation is part of the manner and means by which the conspiracy was undertaken. Consequently, the allegation should remain in the indictment and the motion to strike should be denied.

III  CONCLUSION

Defendant Lark's Motion to Strike Surplusage is without merit and should be denied in its entirety.

Respectfully submitted,
GUY A. LEWIS
UNITED STATES ATTORNEY

BY: *Michael J. Dittoe*
MICHAEL J. DITTOE
Assistant United States Attorney
Court ID #A5500209
500 E. Broward Blvd., Ste. 700
Ft. Lauderdale, FL 33394-3002
Tel: (954) 356-7392
Fax: (954) 356-7230

BY: *Michael J. Dittoe*
TERRENCE THOMPSON
Assistant United States Attorney
Court ID #A5500063
500 E. Broward Blvd., Ste. 700
Ft. Lauderdale, FL 33394-3002
Tel: (954) 356-7392
Fax: (954) 356-7230

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 5TH day of March, 2001 to:

Donald I. Bierman, Esq
Bierman, Shohat, Loewy & Klein, P.A.
800 Brickell Avenue, PH-2
Miami, FL 33131

(305) 358-7000
Attorney for Lark

Steve Kassner, Esq.
815 Ponce de Leon Blvd., Ste. 303
Coral Gables, FL 33134

(305) 461-2744
Attorney for Lampkin

Bruce H. Lehr, Esq.
1401 Brickell Ave., Ste. 810
Miami, FL 33131

(305) 377-1777
Attorney for Seymour

Larry Hanfield, Esq.
4770 Biscayne Blvd., Ste. 1200
Miami, FL 33137

(305) 576-1011
Attorney for Hall

Paul D. Lazarus, Esq.
800 Brickell Ave., PH-2
Miami, FL 33131

(305) 539-0606
Attorney for Crenshaw

Guy Speigelman, Esq.
28 W. Flagler St., Ste. 400
Miami, FL 33131

(305) 373-6634
Attorney for McHome

Reemberto Diaz, Esq.
1435 S. Miami Ave.
Miami, FL 33130

(305) 446-0001
Attorney for Hall

James D. Henderson, Esq.
12121 Wilshire Blvd., Ste. 1130
Los Angeles, CA 90025

(310) 478-3131
Attorney for Gallo

| | |
|---|---|
| Martin R. Raskin, Esq.<br>Grove Forest Plaza, Ste. 206<br>2937 S.W. 27 Ave.<br>Miami, FL 33133<br><br>(305) 444-3400<br>Attorney for Gallo | William J. Cone, Jr., Esq.<br>514 S.E. Seventh St.<br>Ft. Lauderdale, FL 33301<br><br>(954) 764-0570<br>Attorney for Newton |

_____
MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY