**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 00-6311-Cr-Huck/Brown**

UNITED STATES OF AMERICA,

        **Plaintiff,**

v.

CLARENCE LARK, et al,

        **Defendants.**

_____/

## DEFENDANT LARK'S APPEAL OF MAGISTRATE JUDGE'S ORDER DENYING MOTION TO STRIKE SURPLUSAGE WITH RESPECT TO GENERAL ALLEGATION PARAGRAPH 8 OF THE INDICTMENT

Defendant, Clarence Lark ("Lark"), by and through his undersigned counsel, hereby appeals the Magistrate Judge's Order entered on April 10, 2001, in which the Magistrate Judge denied Defendant's Motion to Strike General Allegation Paragraph 8 of the Indictment, to the extent that this paragraph discussed the activities and ruling by the Independent Review Board in barring Lark from holding office with the International Brotherhood of Teamsters, and in support of this appeal would show the following:

1. The Indictment in this case charges Lark with a number of different conspiracy and substantive offenses. In Count 1 he is charged with a racketeering conspiracy in violation of 18 U.S.C. §1962(d). In Count 2 he is charged with conspiracy to import cocaine and marijuana. In Count 3 he is charged with conspiracy to possess with intent to distribute cocaine and marijuana. In Count 4 he is charged with conspiracy to commit money laundering. In Counts 6 through 13 he is charged with substantive counts of money laundering.

2.  The Indictment begins with a "General Allegations" section, which repeats eighteen separate "General Allegations," many of which are later incorporated into other counts of the Indictment.  General Allegation, Paragraph 8 reads as follows:

> The Independent Review Board (IRB) was established by court order in accordance with a Consent Order entered in *United States v. IBT*, 88 CIV. 4486 (S.D.N.Y.) to review the activities of the International Brotherhood of Teamsters.  On September 16, 1996, the International Brotherhood of Teamsters, with the approval of the IRB, permanently barred defendant LARK from holding office with any International Brotherhood of Teamsters entity, paid or unpaid, having membership in Local 390 and any other International Brotherhood of Teamsters entity, or from receiving any compensation or benefits from any International Brotherhood or Teamsters entity other than fully vested benefits.

3.  In Paragraph 9 of the General Allegations, the government alleges that following his removal as Union President and banishment from the Teamsters Union, Lark continued to participate in the management of Teamsters Local 390 and exercise influence over the leadership of the Local 390.

4.  On February 12, 2001, Defendant Lark filed a Motion to Strike Surplusage in which the Defendant sought to modify both paragraphs 8 and 9 of the Indictment.  (Exhibit "A").  The relief requested with respect to paragraph 8 was as follows:

> All of paragraph 8 of the General Allegations and substituting therefor a simple rewording which states that the defendant Lark was removed as President and as a member of the Local Teamsters Union in 1996.

5.  Defendant also requested that paragraph 9 of the General Allegations be amended by substituting the word "exclusion" for "banishment".

-2-

6. In responding, the government argued that the paragraph was relevant to the RICO prosecution because the RICO charge asserts that Lark remained in _de facto_ control of the Union after his removal, and that the reference to the IRB was relevant because the Indictment charged that Lark made false statements to the IRB. (Exhibit "B")

7. On April 10, 2001, in an Order that was received on April 11, 2001, United States Magistrate Judge Steven T. Brown entered an Order denying Defendant's Motion with respect to General Allegation, paragraph 8, "in that the Court finds that the allegations are relevant to the charged RICO conspiracy." but ordering that the term "banishment" be stricken from General Allegations, paragraph 9, and replaced with the term "exclusion." (Exhibit "C")

8. Defendant respectfully appeals the Magistrate Judge's ruling to this Court and respectfully requests that this Court reconsider that ruling and enter an Order striking the last sentence of Paragraph 8 and substituting therefor a simple rewording stating only that Lark was removed as President and as a member of the Local Teamster Union in 1996. Defendant respectfully submits that the Magistrate Judge's conclusions that these allegations are relevant to the charged RICO conspiracy is clearly erroneous.

9. Although the fact that Lark was removed as President and as a member of Local Teamsters Union in 1996 is relevant to the charged conspiracy, this Indictment goes further by alleging that administrative action was taken by the IRB to permanently bar him from holding office. However, any such actions taken by the IRB would not be admissible into evidence pursuant to Rule 803(8)(c) of the Federal Rules of Evidence. This provision

-3-

of the Evidence Code provides that the following are not excluded by the Hearsay Rule, even though the declarant is available as a witness:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (c) in civil actions and proceedings against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the source of information or other circumstances indicate lack of trustworthiness.

10. Under the plain language of this Rule, factual findings resulting from an investigation made by a governmental agency or Court trusteeship such as the IRB, are admissible in civil actions and in proceedings and against the government in criminal cases, but under no circumstances are admissible against a defendant in a criminal case. See *United States v. Oates*, 560 F.2d 45 (2nd Cir. 1977). See also *United States v. Cain*, 615 F.2d 380 (5th Cir. 1980).[1]

11. This is particularly true where the only relevancy of this, as proffered by the government in its Response, goes to show "that Lark remained in de facto control of the Union after his removal in order to continue to enrich himself through, among other things, the collection of illegal money from Willie Jackson that was derived from the sale of narcotics." The defense does not disagree with this proffer of relevancy and the government certainly is free to attempt to prove these facts at trial. However, the circumstances under which Lark was removed from his position with the Union, and particularly the involvement of the Independent Review Board and the existence of

---

[1]    The IRB is a sui generis body created by Court Order as a part of a stipulated trusteeship of the International Brotherhood of Teamsters. It is not, on its face, a governmental agency, thus its reports would lack presumed credibility or reliability.

-4-

14. In summary then, the Defendant does not object to a General Allegation concerning the establishment of the Independent Review Board, as that may relate to paragraph 12 of the manner and means of the conspiracy charged in Count 1, and does not object to a General Allegation that Mr. Lark was no longer President of the Union and not a member of the Union after September 16 1996. However, the allegations concerning the fact that he was "permanently barred" from holding office in the Union, or from having membership in the Union based upon some administrative action taken by the Independent Review Board has no place in the Indictment and no place at this trial.

WHEREFORE, Defendant respectfully requests that this Court review Magistrate Judge Brown's conclusion and that this Court grant the Motion to Strike the General Allegations in Paragraph 8 concerning the action of the IRB in Lark's removal from office and membership in the Teamsters.

Respectfully submitted,

BIERMAN, SHOHAT,
LOEWY & KLEIN P.A.
Attorneys for Defendant Lark
800 Brickell Avenue PH-2
Miami, FL 33131-2944
Phone: 305-358-7000
Facsimile: 305-358-4010

By _____
DONALD I. BIERMAN, ESQ.
Florida Bar: 093244

-6-

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered this 17th day of April, 2001, to all parties listed on the attached Service List.

DONALD I. BIERMAN, ESQ.

-7-

**SERVICE LIST**
UNDER STATES v CLARENCE LARK, et al
CASE NO. 00-6311-Cr-Huck

Michael J. Dittoe, Esq.
Assistant U.S. Attorney
500 East Broward Blvd.
7th Floor
Fort Lauderdale, FL 33394

954-356-7392, 7254 ext. 3586


Paul D. Lazarus, Esquire
800 Brickell Avenue
Penthouse Two
Miami, FL  33131

305-539-0606
Attorney for Crenshaw


Guy Speigelman, Esquire
Suite 400
28 West Flagler Street
Miami, FL 33131

305-373-6634
Attorney for McHome


Reemberto Diaz, Esquire
1435 South Miami Avenue
Miami, FL 33130

305-446-0001
Attorney for Hall


James D. Henderson, Esquire
12121 Wilshire Blvd., Suite 1130
Los Angeles, CA 90025

310-478-3131
Attorney for Gallo


William J. Cone, Jr., Esquire
514 S.E. 7th Street
Fort Lauderdale, FL 33301

954-764-0570
Attorney for Newton


Donald I. Bierman, Esq
Bierman, Shohat, Loewy & Klein P.A.
800 Brickell Avenue, PH-2
Miami, FL 33131

305-358-7000
Attorney for Lark


Steve Kassner, Esquire
815 Ponce de Leon Blvd.
Suite 303
Coral Gables, FL 33134

305-461-2744
Attorney for Lampkin


Bruce H. Lehr, Esquire
Suite 810
1401 Brickell Avenue
Miami, FL 33131

305-377-1777
Attorney for Seymour


Larry Hanfield, Esquire
4770 Biscayne Blvd.
Suite 1200
Miami, FL 33137

305-576-1011
Attorney for Hall


Martin R. Raskin, Esquire
Grove Forest Plaza, Suite 206
2937 S.W. 27 Avenue
Miami, FL 33133

305-444-3400
Attorney for Gallo

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6311-Cr-Huck/Brown

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs**

**CLARENCE LARK, et al,**

**Defendants.**

_____/

## MOTION TO STRIKE SURPLUSAGE
## AND MEMORANDUM OF LAW AND FACT
## IN SUPPORT THEREOF

The Defendant, Clarence Lark, by and through his undersigned counsel moves this Honorable Court to strike surplusage from the indictment pursuant to Rule 7 of the Federal Rules of Criminal Procedure. The specific requests to strike are the following:

1. All of paragraph 8 of the General Allegations and substituting therefor a simple rewording which states that the defendant Lark was removed as President and as a member of the Local Teamsters Union in 1996.

2. In paragraph 9 of the General Allegations, the defendant would request that the word "exclusion" be substituted for "banishment".

3. In paragraph 10 of the General Allegations, the defendant would move to strike the term "silent partner".

4. Paragraph 7 of Count 1 of the Indictment should be stricken in its entirety.



-1-

5. Paragraph 9 of Count 1, the words "would abuse the responsibilities as officers of Teamsters Local 390" should be stricken since the crime of facilitating the smuggling of drugs only requires facilitating the smuggling of drugs and not any responsibility as officers of the Teamsters.

6. Paragraph 11 should be stricken in its entirety.

7. Paragraph 12 should be stricken in its entirety.

8. Paragraph 13 the terms "even after the IRB removed him as Teamster Local President" should be stricken.

9. Paragraph 14 should be stricken in its entirety.

10. Paragraph 15 the term "corrupt" preceding "relationship" should be stricken.

11. In Count 3 of the Indictment, paragraph #6, the statement that "Ricardo McHorne previously convicted of a felony drug offense" must be stricken as prejudicial to all parties, as well as to McHorne.

12. Counsel has discussed the contents of this motion with Assistant United States Attorney Michael Dittoe who objects to all parts of the Motion to Strike with the exception of that portion dealing with the prior conviction of Mr. McHorne. He is willing to have that portion redacted.

## MEMORANDUM OF LAW AND FACT

### A. Legal Background

Rule 7(d) of the Federal Rules of Criminal Procedure provides in pertinent part that:

"The Court on motion of the defendant may strike surplusage from the indictment. . .".

Rule 7(c) in pertinent part provides that "the indictment or information shall be a plain,

LAW OFFICES OF BIERMAN, SHOHAT, LOEWY & KLEIN, P.A. PENTHOUSE TWO, 800 BRICKELL AVENUE, MIAMI, FLORIDA 33131-2944

concise, and definite written statement of the **essential facts** constituting the offense

charge." (emphasis supplied) Since "[p]rosecutors have been known to insert unnecessary

allegations for 'color' or 'background' hoping that these will stimulate the interest of the

jurors," 1 C. Wright, <u>Federal Practice and Procedure</u>, §127 at 425 (1982), it is well-settled

that a district court, on the motion of a defendant made pursuant to Rule 7(d),

Fed.R.Crim.P., may strike surplusage from an indictment. The rule was designed to

"protect [ ] the defendant against immaterial or irrelevant allegations in an indictment or

information, which may, however, be prejudicial." Advisory Committee Notes to Rule 7(d),

Fed.R.Crim.P.

The decision to grant a motion to strike surplusage is addressed to the sound

discretion of the district court. <u>United States v. Courtney</u>, 257 F.2d 944 (2d Cir. 1958). In

keeping with the purpose behind Rule 7(d), language characterized as surplusage will be

stricken from the indictment if "the words sought to be stricken as surplusage are

immaterial, irrelevant <u>or</u> apt to convey prejudicial or inadmissible material to the jury."

<u>United States v. Ostrer</u>, 481 F.Supp. 407, 419 (S.D.N.Y. 1979) (emphasis added)

(citing <u>United States v. Chovanec</u>, 467 F.Supp. 41, 45 (S.D.N.Y. 1979)[1] Further, language

---

[1]<u>See also United States v. Scarpa</u>, 913 F.2d 993, 10-13 (2d Cir. 1990); <u>United States v. DeFabritus</u>, 605 F.Supp. 1538, 1547 (S.D.N.Y. 1985) (striking language from indictment "serv[ing] no useful purpose and allow[ing] the jury to draw the inference that the defendant is accused of crimes not charged in the indictment:); <u>United States v. Wilson</u>, 565 F.Supp. 1416, 1439 (S.D.N.Y. 1983) (striking indictment language exhibiting "the potentiality of an overshadowing prejudice"); <u>United States v. Archer</u>, 335 F.Supp. 981, 989 (S.D.N.Y. 1972); see <u>United States v. Brighton Building and Maintenance Co.</u>, 435 F.Supp. 222, 2313 (N.D. Ill. 1977) (government "may not use the indictment as a vehicle to persuade the jury that the crime alleged has great and hidden implications") (footnote omitted); <u>United States v. Jenkins</u>, 785 F.2d 1387, 1392 (9th Cir. 1986)("The inclusion of surplusage must not be allowed to prejudice a defendant in the context of his case"). See also <u>United States v. Bateman</u>, 805 F.Supp. 1045, 1049-50 (D.N.H. 1992) ("As a matter of law, even over the objection of the parties, the court has broad discretion to strike surplusage in an indictment.") (citing Fed.R.Crim.P. 7(d)).

-3-

in the indictment that does not relate to an essential element set out in the statute is mere

"surplusage." See United States v. Manginen, 565 F.Supp. 1024, 1025 (E.D.Va. 1983)[2]

("[Surplusage is] any fact or circumstance set forth in the indictment which is not a

necessary ingredient of the offense.") (citation omitted).

In addition, any language in the indictment that might result in jury confusion is

surplusage. See United States v. Mandel, 415 F.Supp. 997, 1009 (D.Md. 1976). Where

surplusage might result in prejudice or confusion, striking of that portion of the indictment

is the appropriate remedy. Dranow v. United States, 307 F.2d 545, 558 (8th Cir. 1962).[3]

### B. The Surplusage in the Instant Indictment

The defendant submits that the Indictment contains the unfairly prejudicial

surplusage as set forth in the motion above and which will be dealt with in the Memo

individually[4]

1.    *Banishment from the Union*

Paragraph 8 of the General Allegations goes into detail about the Independent

---

[2] The Eleventh Circuit suggests in ruling that the District Court did not abuse its discretion in failing to strike surplusage, that the standard for striking surplusage is an exacting standard. See United States v. Huppert, 917 F.2d 507 at 511 (11th Cir. 1990). We suggest that the instant motion meets that standard and is clearly within this Court's discretion.

[3] See also United States v. Poore, 594 F.2d 39, 41-43 (4th Cir. 1979) (finding that trial court abused its discretion in refusing to strike language descriptive of prior conviction from the indictment); United States v. Lavin, 504 F.Supp. 1356, 1362-63 (N.D. Ill. 1981) (striking potentially inflammatory paragraph overstating scope and result of alleged fraud); United States v. Hubbard, 474 F.Supp. 64, 82-83 (D.D.C. 1979) (striking "irrelevant descriptive recitals" and "inflammatory language" from indictment); United States v. Mandel, 415 F.Supp. at 1009 (striking references to Code of Ethics as surplusage).

[4] It is the common custom and practice in the Southern District of Florida to submit the indictment to the jury. The Court will undoubtedly instruct the jury that the indictment itself is not evidence. However, notwithstanding this instruction, it is essential in this case that the prejudicial surplusage be stricken. The failure to strike the surplusage gives the government the opportunity to make a written closing argument in addition to their oral closing argument at the close of the case.

Review Board and Consent Orders entered in the United States District Court for the Southern District of New York. This action is neither required nor relevant.

The defendant Lark was without counsel at these proceedings, these proceedings are civil in nature, and this paragraph discussing permanent bar and "banishment" suggest wrongdoing which is of questionable relevance and great prejudice. If an attempt to introduce this evidence at the trial were to be made without reference in the indictment, it would most certainly be subject to an inquiry pursuant to Federal Rule of Evidence 403 to determine whether its relevance was outweighed by the prejudice. Clearly this is of questionable relevance and tremendous prejudice.

By placing this in the indictment, the government will no doubt argue that they are entitled to prove it since "it's in the indictment". It neither belongs in the indictment, nor at trial. However, this is a matter which the Court should be free to rule upon without the jury having been prejudiced in the reading of the indictment in the beginning of the case, if that is done, or the submission of the indictment to the jury at the conclusion of the case.

While some mention of the fact that Mr. Lark was no longer president of the Union and not a member of the Union after September 16, 1996 may be relevant, it certainly can be proved without the prejudice suggested in paragraph 8, without the imprintur of a United States District Court and without inflammatory terms such as "banishment". The government simply can prove that Mr. Lark was no longer president of the Union, nor permitted by the Union to be a member or deal in its affairs.

Permitting the introduction of a hearing conducted pursuant to the United States District Court which makes a finding of wrongdoing sufficient to ban Mr. Lark from the

-5-

Union is the equivalent of entering a past conviction into evidence. It must be noted that the hearings in this case were conducted without counsel (in fact counsel was not permitted), and the conclusions were those reached by an Independent Review Board. Just as an uncounseled conviction cannot be entered into court for purposes of impeachment or other purposes, such as proving a conviction for the purpose of carrying a firearm by a convicted felon, such an introduction of a hearing conducted without the benefit of an attorney can equally not be permitted into evidence and certainly not into the language of the Indictment. See e.g. Loper v. Beto, 92 S.Ct. 1014, 405 U.S. 364 (1972) in which the Supreme Court made it clear that in convictions that preceded Gideon, where the defendant was without counsel, said convictions were infirm and not admissible in Court. This same rule must be applied to avoid the appearance of propriety in a case where there was no attorney permitted.

In the same area, but not quite egregious as paragraph 9 which uses the term "banishment" it could quite simply state in one paragraph that after Mr. Lark's removal as Union president and member of the Union, the government alleges that he continued to participate in the management of Teamster Local 390 and exercise influence over the leadership. In all events, the term "banishment" should be stricken.

In United States v. Hubbard, 474 F.Supp. 64 (D.D.C. 1979), the Court points out that reference to certain mattes which are not charged in the indictment as substantive offenses, may be prejudicial to the defendant and struck reference to a confrontation in that case between the FBI and the Church of Scientology, holding "Since this occurrence is not [like exclusion from the union and removal of office] charged in the indictment as a

-6-

substantive offense, the court finds that it may be prejudicial to the defendants. Accordingly, it shall be stricken from the indictment." 474 F.Supp. 64 at 83.

Similarly to the reference in this case to a judicial proceeding removing and excluding Lark from the Union, the Court in Hubbard excluded the reference to a guilty plea and sentence of a defendant for wrongful use of a government seal. That Court correctly found that such references are prejudicial and irrelevant.

### 2.    References as "Silent Partner"

Paragraph 10 of the General Allegations refers to Lark as a "silent partner" in Star's Choice. The term "silent partner" carries with it negative implications and is unnecessary for the allegation, since it can be said that Lark exercised control over Star's Choice Inc. although he was neither an employee, an officer or a stockholder.

### 3. Paragraphs 7 and 9 of Count 1

The matters contained in paragraphs 7 and 9 of Count 1 suggest matters which are not crimes, but are inflammatory in their very nature. The language in paragraph 7 suggesting that Lark and Crenshaw violated their duties of honesty and trust that they owed to the rank and file members is unnecessary surplusage, particularly since the only reference is the fact that they sought to receive illegal income. The language in paragraph 9 also is surplusage, since it suggests that they abuse of their responsibilities as officers of the Teamsters Local by facilitating smuggling from narcotics. The crime is the facilitating the smuggling of large quantities of cocaine and marijuana, not abusing union authority to do so. Similarly, the use of the term "abuse positions of trust, maintaining influence over the operations of the Union and rigging various elections of the Union" and

-7-

then suggesting a "corrupt" relationship with managers are all inflammatory terms which do not add to the indictment, but only serve to inflame and/or confuse the jury by reference to inadmissible events. This is the very type of inserted language that is used only for "color". See 1 C. Wright, Federal Practice & Procedures supra. As the Court found in Hubbard, supra, certain words are inflammatory, such as "rigging", "infiltrate", "corrupt", etc. and should be stricken.[5]

## C. CONCLUSION

This motion is a narrowly-focused request to have specific portions of the Indictment stricken, not a broadside on the government's case. For these reasons, the defendant Clarence Lark respectfully requests that this Court exercise its discretion and enter an Order striking from the Indictment the entirety of paragraph 8 of the General Allegations; the term "banishment" in paragraph 9 of the General Allegations; the term "silent partner" in paragraph 10 of the General Allegations; all of paragraph 7 of Count 1; the language "would abuse their responsibilities as officers of Teamsters Local 390" from paragraph 9 of the Count 1; all of paragraph 11 of Count 1; all of paragraph 12 of Count 1; the language in paragraph 13 "even after the IRB removed him as a Teamster Local 390 President"; the language in paragraph 14 stating "rig various union elections"; the term "corrupt" in paragraph 15. The Defendant requests such other and further relief that the Court may deem just and proper under the circumstances.

---

[5]The arguments addressed to the IRB hearing mentioned above as to paragraph 8 of the General Allegations are equally relevant to paragraph 13 of Count 1.

LAW OFFICES OF BIERMAN, SHOHAT, LOEWY & KLEIN, P.A. PENTHOUSE TWO, 800 BRICKELL AVENUE, MIAMI, FLORIDA 33131-2944

Respectfully submitted,

**BIERMAN, SHOHAT,
LOEWY & KLEIN P.A.**
Attorneys for Defendant
800 Brickell Avenue PH-2
Miami, FL 33131-2944
Phone: 305-358-7000
Facsimile: 305-358-4010


By: _____
DONALD I. BIERMAN, ESQ.
Florida Bar: 093244


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered this 12th day of February, 2001, to all parties listed on the attached Service List.


_____
DONALD I. BIERMAN, ESQ.

**SERVICE LIST**
UNITED STATES v CLARENCE LARK, et al
CASE NO. 00-6311-Cr-Huck

Michael J. Dittoe, Esq.
Assistant U.S. Attorney
500 East Broward Blvd.
7th Floor
Fort Lauderdale, FL 33394

954-356-7392, 7254 ext. 3586

Paul D. Lazarus, Esquire
800 Brickell Avenue
Penthouse Two
Miami, FL  33131

305-539-0606
Attorney for Crenshaw

Guy Speigelman, Esquire
Suite 400
28 West Flagler Street
Miami, FL 33131

305-373-6634
Attorney for McHome

Reemberto Diaz, Esquire
1435 South Miami Avenue
Miami, FL 33130

305-446-0001
Attorney for Hall

James D. Henderson, Esquire
12121 Wilshire Blvd., Suite 1130
Los Angeles, CA 90025

310-478-3131
Attorney for Gallo

William J. Cone, Jr., Esquire
514 S.E. 7th Street
Fort Lauderdale, FL 33301

954-764-0570
Attorney for Newton

Donald I. Bierman, Esq
Bierman, Shohat, Loewy & Klein P.A.
800 Brickell Avenue, PH-2
Miami, FL 33131

305-358-7000
Attorney for Lark

Steve Kassner, Esquire
815 Ponce de Leon Blvd.
Suite 303
Coral Gables, FL 33134

305-461-2744
Attorney for Lampkin

Bruce H. Lehr, Esquire
Suite 810
1401 Brickell Avenue
Miami, FL 33131

305-377-1777
Attorney for Seymour

Larry Hanfield, Esquire
4770 Biscayne Blvd.
Suite 1200
Miami, FL 33137

305-576-1011
Attorney for Hall

Martin R. Raskin, Esquire
Grove Forest Plaza, Suite 206
2937 S.W. 27 Avenue
Miami, FL 33133

305-444-3400
Attorney for Gallo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 00-6311-CR-HUCK

UNITED STATES OF AMERICA,

     Plaintiff,

VS.

CLARENCE LARK, Et Al.

     Defendants

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT LARK'S MOTIONS TO STRIKE SURPLUSAGE

Comes now the United States, and hereby files its response to the Defendant Lark's motion to strike surplusage from the indictment.

    I  Introduction and Nature of The RICO Charge

Defendant Lark seeks to strike as surplusage various allegation in Count one of the Indictment which charges that Lark conspired to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(d). The gist of the RICO charge is that Lark operated Teamsters Local 390, of which he was the President, as a Racketeering Enterprise. He used his position as the President of Teamsters Local 390 to enrich himself through a variety of illegal activities, including drug trafficking and extortion of union members.

During a portion of the time that Lark was President of

Teamsters Local 390, he was under investigation by the Independent Review Board (IRB). The IRB was established by court order to police the internal activities of the Teamsters Union. In order to preserve his source of illegal income, Lark and others made false and misleading statements to the IRB concerning various illegal activities he was conducting. These false statements included statements about Lark's involvement in Star's Choice, which was responsible for leasing trucks to movie and television production companies to which Teamster Local 390 supplied labor.

Thus, the IRB's investigation and Lark's false statement constitute an inseparable part of the RICO violation charged in the indictment. The IRB ordered Lark removed as President of Teamsters Local 390 and barred Lark from the Teamsters Union for life. However, in direct contravention of this order, Lark remained in de facto control of Teamsters Local 390 in order to provide for himself a continuing source of illegal payments of drug money by fellow teamster member and drug smuggler Willie Jackson. All these acts comprise the RICO charge against Defendant Lark.

II Lark's Motion to Strike Surplusage is Not Well Founded

Motions to strike claimed surplusage from an indictment are reviewed under well established legal standards. "A motion to strike surplusage should not be granted unless it is clear that

2

the allegations are not relevant to the charge and are inflammatory and prejudicial...This is a most exacting standard." United States v. Awan, 966 F. 2d 1415, 1426 (11th Cir. 1992)(quotations and citations omitted); United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990). This is particularly true in prosecutions brought under the broad and far reaching provisions of the RICO statute, which allows for a detailed description of the criminal enterprise in the indictment. See, e.g., United States v. Eisenberg, 773 F.Supp. 662, 698-701 (D.N.J. 1991); United States v. Gatto, 746 F.Supp. 432, 455-456 (D.N.J. 1990); United States v. Giovanelli, 747 F.Supp. 875, 888-889 (S.D.N.Y. 1989); United States v. Santoro, 647 F.Supp. 153, 176-177 (E.D.N.Y. 1986).

In applying these principles to the case before the Court, it is clear that Lark's motion to strike is not well founded. All the complained of language simply describes the nature of the illegal racketeering enterprise operated by Defendant Lark. The allegations set forth the nature of the illegal activities and thus place the defendant on notice as to the nature and scope of the illegal activities undertaken by members of the enterprise. The United States will address the complaints of the Lark seriatim.

Defendant moves to strike the following allegation from the Indictment:

3

a. General Allegations, Paragraph 8

The Independent Review Board (IRB) was established
by court order in accordance with a consent order
entered in <u>United States v. IBT,</u> 88 CIV. 4486
(S.D.N.Y.) to review the activities of the
International Brotherhood of Teamsters.  On September
16, 1996, the International Brotherhood of Teamsters,
with the approval of the IRB, permanently barred
defendant LARK from holding office with any
International Brotherhood of Teamsters entity, paid or
unpaid, having membership in Local 390 and any other
International Brotherhood of Teamsters entity, or from
receiving any compensation or benefits from any
International Brotherhood of Teamsters entity other
than fully vested benefits.

This paragraph is relevant to the RICO prosecution because
the RICO charge asserts that Lark remained in <u>de facto</u> control of
the union after his removal in order to continue to enrich
himself through, among other things, the collection of illegal
money from Willie Jackson that was derived from the sale of
narcotics. (Count 1, Manner and Means of the RICO conspiracy,
Paragraph 13).  The reference to the IRB is relevant because the
indictment charges that Lark made false statements to the IRB in
an effort to maintain <u>de jure</u> control of local 390. (Count I,
Manner and Means of the RICO conspiracy, Paragraph 12).
Defendant essentially wants to edit the indictment so as to
eliminate a portion of the charged enterprise.  Under the well
settled case law set forth above, Defendant's motion should be
denied.

4

### b. General Allegation, Paragraph 9

Following his removal as Union President and banishment from the Teamsters Union, however, defendant LARK continued to participate in the management of Teamsters Local 390 and exercise influence over the leadership of the Local 390.

This allegation is relevant because it describes how Lark continued to operate Teamsters Local 390 after he was removed as President of the Union. This is the manner and means by which Lark illegally continued to exercise influence over the union in order to further his illegal activities. This is an integral part of the operation of the RICO enterprise. Furthermore, Lark's suggestion that the indictment be reworded is a without precedent; a criminal defendant is not entitled to frame the charge on which he wishes to be tried--that responsibility rests with the grand jury and not the defendant.

### c. General Allegations, Paragraph 10

Defendant LARK was a silent partner in, and exercised control over, Star's Choice, Inc. (Star's Choice). Star's Choice was a Florida corporation that rented vehicles to the movie and television industry. Teamsters Local 390, under the control of defendant LARK, supplied the drivers for the trucks rented by Star's Choice to movie and television production companies located in South Florida.

This is relevant to the RICO charge in that part of the corrupt manner by which Lark operated Teamsters Local 390 was to maintain a silent interest in Star's Choice which leased vehicles to television and movie production companies. The terms of these leases were negotiated by the transportation captains for the

5

movie companies, who were teamster members under the control of
Lark.   Thus Lark, through his silent interest in Star's Choice,
was essentially negotiating the leasing of these vehicles with
himself. (Count I, Manner and Means of the RICO conspiracy,
Paragraph 11).   In addition, Lark's silent interest in Star's
Choice is relevant to the laundering of drug money through Star's
Choice that was conducted by Lark and others.   The motion to
strike should be denied.

### d. Count 1, Manner and Means of the RICO, Paragraph 7

It was further part of the conspiracy that defendants
CLARENCE LARK, LARRY CRENSHAW and other conspirators would
violate their duties of honesty and trust that they owed to
the rank and file members of Teamsters Local 390 in order to
generate illegal income for themselves and the other members
of the conspiracy.

This paragraph is relevant in that the RICO count charges
that Lark violated his duty of loyalty to union members by
extorting them, accepting bribe payments from certain select
members in order to further their drug trafficking and
negotiating with himself concerning the leasing of vehicles from
Star's Choice.   This, along with the drug trafficking, is the
very heart of the RICO charge.   The motion to strike should be
denied.

### e. Count 1, Manner and Means of the RICO, Paragraph 9

It was further part of the conspiracy that defendants
CLARENCE LARK, LARRY CRENSHAW and other conspirators would
abuse their responsibilities as officers of Teamsters Local
390 by  facilitating the smuggling of over 3,500 kilograms

of cocaine and over 39,000 kilograms of marijuana through Port Everglades in exchange for substantial bribes from drug smugglers.

Lark asserts that the reference to the abuse of the defendant's position as a Teamsters officer should be stricken. This, again, is the heart of the RICO charge. The RICO charge asserts that Lark conducted the affairs of Teamsters Local 390 through a pattern of Racketeering activity involving drug trafficking and extortion. Thus, the manner by which the crime was even possible was through Lark's abuse of the position entrusted to him by his fellow Teamsters. This allegation should remain in the indictment and the motion to strike should be denied.

### f. Count 1, Manner and Means of the RICO, Paragraphs 11-13

11. It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would abuse their positions of trust as union leaders of Teamsters local 390 by having interests in Star's Choice, while simultaneously controlling Union officials responsible for negotiating contracts involving the renting of vehicles from Star's Choice, thereby creating and profiting from a conflict of interest at the expense of Teamsters Local 390 members.

12. It was further part of the conspiracy that defendants CLARENCE LARK and other conspirators would, for the purpose of maintaining their positions as union officials and their relationship with Willie Jackson's drug organization, make, and cause to be made, false and misleading statements concerning the administration of Teamsters Local 390 during an investigation conducted by IRB.

13. It was further part of the conspiracy that defendant CLARENCE LARK would continue to maintain and exercise influence over the operation of Teamsters Local

7

390, even after the IRB removed him as Teamster Local 390
President, in order to continue to maintain for himself,
defendant CRENSHAW and other conspirators a source of
illegal income from narcotics trafficking and extortion.

These allegations all center on Lark's relationship with
Star's Choice and the investigation of that relationship being
conducted by the IRB. It is the government's position that
Lark's conflict of interest involving his silent partnership in
Star's Choice is part of the criminal activity engaged in by Lark
as President of Teamsters Local 390. In addition, in order to
maintain his source of illegal drug payments from Willie Jackson,
Lark lied, and caused others to lie, to the IRB concerning his
relationship with Star's Choice and his demand for extortion
payments from teamster members who worked on movie sets. These
false statements were designed to deceive the IRB and allow Lark
to remain in de jure control of Teamsters Local 390. As
President of Teamsters Local 390 Lark was in a position to
protect the drug trafficking activities of Willie Jackson, in
exchange for drug money provided by Willie Jackson to Lark.
Lark, in turn, would use the illegal drug money to, among other
things, finance Star's Choice. Thus all the allegations in these
paragraphs are relevant in that they describe the criminal
activity undertaken by Lark. The motion to strike should be
denied.

8

### g. Count 1, Manner and Means of the RICO, Paragraph 14

14.    It was further part of the conspiracy that the
defendants and other conspirators would rig various union
elections in order to establish, maintain and further their
influence over the leadership of Teamsters Local 390, so
that members of the conspiracy would continue to profit from
their illegal activities.

This paragraph is relevant because it too describes the

criminal activity undertaken by Lark as President of the

Teamsters Local 390.   Lark used his position as President to help

rig union elections in order to maintain his own power and source

of influence over the Union.   This was undertaken so that Lark

could, among other things, continue to receive drug money

payments from Willie Jackson.   The motion to strike should be

denied.

### h. Count 1 Manner and Means of the RICO, Paragraph 15

It was further part of the conspiracy that the defendants
would endeavor to form a corrupt relationship with managers
and employees of Crowley in order to obtain information
about on-going criminal investigations and otherwise further
the illegal activities of the enterprise.

Lark complains of the use of the word "corrupt" which he

wishes to be removed from the indictment.   The relevance of the

allegation is clear in that Lark sought to obtain information

about the government's on going investigation into drug

trafficking through Port Everglades.   An effort to secure

information, that had been shared with certain officials of the

maritime shipping company Crowley in order not to compromise the

9

covert nature of the investigation, was clearly corrupt in that it was designed to thwart the investigation.  Thus, this allegation is part of the manner and means by which the conspiracy was undertaken. Consequently, the allegation should remain in the indictment and the motion to strike should be denied.

III CONCLUSION

Defendant Lark's Motion to Strike Surplusage is without merit and should be denied in its entirety.

> Respectfully submitted,
> GUY A. LEWIS
> UNITED STATES ATTORNEY
>
> BY: _[signature]_
> MICHAEL J. DITTOE
> Assistant United States Attorney
> Court ID #A5500209
> 500 E. Broward Blvd., Ste. 700
> Ft. Lauderdale, FL 33394-3002
> Tel: (954) 356-7392
> Fax: (954) 356-7230
>
> BY: _[signature]_
> TERRENCE THOMPSON
> Assistant United States Attorney
> Court ID #A5500063
> 500 E. Broward Blvd., Ste. 700
> Ft. Lauderdale, FL 33394-3002
> Tel: (954) 356-7392
> Fax: (954) 356-7230

10

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _5ᵗʰ_

day of March, 2001 to:


Donald I. Bierman, Esq
Bierman, Shohat, Loewy & Klein, P.A.
800 Brickell Avenue, PH-2
Miami, FL 33131

(305) 358-7000
Attorney for Lark

Steve Kassner, Esq.
815 Ponce de Leon Blvd., Ste. 303
Coral Gables, FL 33134

(305) 461-2744
Attorney for Lampkin

Bruce H. Lehr, Esq.
1401 Brickell Ave., Ste. 810
Miami, FL 33131

(305) 377-1777
Attorney for Seymour

Larry Hanfield, Esq.
4770 Biscayne Blvd., Ste. 1200
Miami, FL 33137

(305) 576-1011
Attorney for Hall


Paul D. Lazarus, Esq.
800 Brickell Ave., PH-2
Miami, FL 33131

(305) 539-0606
Attorney for Crenshaw

Guy Speigelman, Esq.
28 W. Flagler St., Ste. 400
Miami, FL 33131

(305) 373-6634
Attorney for McHome

Reemberto Diaz, Esq.
1435 S. Miami Ave.
Miami, FL 33130

(305) 446-0001
Attorney for Hall

James D. Henderson, Esq.
12121 Wilshire Blvd., Ste. 1130
Los Angeles, CA 90025

(310) 478-3131
Attorney for Gallo

Martin R. Raskin, Esq.
Grove Forest Plaza, Ste. 206
2937 S.W. 27 Ave.
Miami, FL 33133

(305) 444-3400
Attorney for Gallo

William J. Cone, Jr., Esq.
514 S.E. Seventh St.
Ft. Lauderdale, FL 33301

(954) 764-0570
Attorney for Newton

MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY

00-6311.op

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6311 CR HUCK

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

CLARENCE LARK, et al.,

     Defendant.

_____/

## ORDER ON MOTION TO STRIKE SURPLUSAGE

This Cause is before the Court on Defendant Clarence Lark's Motion to Strike Surplusage, filed February 12, 2001. The Court having reviewed the Motion and the Response, and being otherwise fully advised, it is **ORDERED AND ADJUDGED** as follows:

1. As to General Allegations, ¶¶ 8 and 10, the Motion is **DENIED**, in that the Court finds that the allegations are relevant to the charged RICO conspiracy.

2. As to General Allegations, ¶ 9, the Motion is **GRANTED**, to the extent that the term "banishment" shall be **STRICKEN** and replaced with the term "exclusion."

3. As to Count 1, Manner and Means, ¶ 7, the Motion is **GRANTED**, and that paragraph is **STRICKEN** as superfluous. Allegations concerning extortion and bribery of union members are contained in other paragraphs of the indictment.

4. As to Count 1, Manner and Means, ¶ 9, the Motion is **DENIED**.

5. As to Count 1, Manner and Means, ¶¶ 11, 12, 13, 14 and 15, the Motion is **DENIED**.

6. As to Count 3, ¶ 6, and the allegation that Defendant McHorne has a prior felony drug conviction, the Motion is **DENIED** as moot, in that the allegation has already been stricken from the

1

indictment by separate Order.

**DONE AND ORDERED** this _10_th_ day of April, 2001 at Miami, Florida.


                                          STEPHEN T. BROWN
                                          U.S. MAGISTRATE JUDGE

cc:     Honorable Paul C. Huck
        Michael Dittoe, Esq. (AUSA)
        Paul D. Lazurus, Esq.
        James D. Henderson, Esq.
        Donald I. Bierman, Esq.
        William Cone, Esq.
        Reemberto Diaz, Esq.
        Martin R. Raskin, Esq.
        Steve Kassner, Esq.
        Larry R. Handfield, Esq.
        Bruce H. Lehr, Esq.
        Guy Spiegelman, Esq.