UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 00-6311-CR-HUCK



UNITED STATES OF AMERICA,

    Plaintiff,

VS.

CLARENCE LARK, Et Al.

    Defendants

_____/

GOVERNMENT'S RESPONSE TO DEFENDANT LARK'S MOTIONS TO STRIKE
SURPLUSAGE

Comes now the United States, and hereby files its response
to the Defendant Lark's motion to strike surplusage from the
indictment.

I Introduction and Nature of The RICO Charge

Defendant Lark appeals to the District Court from the
decision of Magistrate Judge Brown that denied his motion to
strike Paragraph 8 of the General Allegations of the Indictment.
This paragraph relates to Lark's removal as President of
Teamsters Local 390 and Lark's continued influence over that
union in violation of the order removing Lark from the union.

Count one of the Indictment charges that Lark conspired to
violate the Racketeer Influenced and Corrupt Organizations (RICO)
statute, 18 U.S.C. § 1962(d). The gist of the RICO charge is
that Lark operated Teamsters Local 390, of which he was the

President, as a Racketeering Enterprise.  He used his position as the President of Teamsters Local 390 to enrich himself through a variety of illegal activities, including drug trafficking and extortion of union members.

During a portion of the time that Lark was President of Teamsters Local 390, he was under investigation by the Independent Review Board (IRB).  The IRB was established by court order to police the internal activities of the Teamsters Union. In order to preserve his source of illegal income, Lark and others made false and misleading statements to the IRB concerning various illegal activities he was conducting.  These false statements included statements about Lark's involvement in Star's Choice, which was responsible for leasing trucks to movie and television production companies to which Teamster Local 390 supplied labor.

Thus, the IRB's investigation and Lark's false statement constitute an inseparable part of the RICO violation charged in the indictment.  The IRB ordered Lark removed as President of Teamsters Local 390 and barred Lark from the Teamsters Union for life.  However, in direct contravention of this order, Lark remained in de facto control of Teamsters Local 390 in order to provide for himself a continuing source of illegal payments of drug money by fellow teamster member and drug smuggler Willie Jackson.  All these acts comprise the RICO charge against

2

Defendant Lark.

    II <u>Lark's Motion to Strike Surplusage is Not Well Founded</u>

    Motions to strike claimed surplusage from an indictment are
reviewed under well established legal standards. "A motion to
strike surplusage should not be granted unless it is clear that
the allegations are not relevant to the charge and are
inflammatory and prejudicial...This is a most exacting standard."
<u>United States v. Awan</u>, 966 F. 2d 1415, 1426 (11th Cir.
1992)(quotations and citations omitted); <u>United States v.
Huppert</u>, 917 F.2d 507, 511 (11th Cir. 1990). This is
particularly true in prosecutions brought under the broad and far
reaching provisions of the RICO statute, which allows for a
detailed description of the criminal enterprise in the
indictment. See, e.g., <u>United States v. Eisenberg</u>, 773 F.Supp.
662, 698-701 (D.N.J. 1991); <u>United States v. Gatto</u>, 746 F.Supp.
432, 455-456 (D.N.J. 1990); <u>United States v. Giovanelli</u>, 747
F.Supp. 875, 888-889 (S.D.N.Y. 1989); <u>United States v. Santoro</u>,
647 F.Supp. 153, 176-177 (E.D.N.Y. 1986).

    In applying these principles to the case before the Court,
it is clear that Lark's motion to strike is not well founded. All
the complained of language simply describes the nature of the
illegal racketeering enterprise operated by Defendant Lark.  The
allegations set forth the nature of the illegal activities and
thus place the defendant on notice as to the nature and scope of

the illegal activities undertaken by members of the enterprise.

The United States will address the complaints of the Lark

seriatim.

Defendant moves to strike the following allegation from the

Indictment:

General Allegations, Paragraph 8

> The Independent Review Board (IRB) was established
> by court order in accordance with a consent order
> entered in United States v. IBT, 88 CIV. 4486
> (S.D.N.Y.) to review the activities of the
> International Brotherhood of Teamsters.  On September
> 16, 1996, the International Brotherhood of Teamsters,
> with the approval of the IRB, permanently barred
> defendant LARK from holding office with any
> International Brotherhood of Teamsters entity, paid or
> unpaid, having membership in Local 390 and any other
> International Brotherhood of Teamsters entity, or from
> receiving any compensation or benefits from any
> International Brotherhood of Teamsters entity other
> than fully vested benefits.

This paragraph is relevant to the RICO prosecution because

the RICO charge asserts that Lark remained in de facto control of

the union after his removal in order to continue to enrich

himself through, among other things, the collection of illegal

money from Willie Jackson that was derived from the sale of

narcotics. (Count 1, Manner and Means of the RICO conspiracy,

Paragraph 13).  The reference to the IRB is relevant because the

indictment charges that Lark made false statements to the IRB in

an effort to maintain de jure control of local 390. (Count I,

Manner and Means of the RICO conspiracy, Paragraph 12).

4

Defendant essentially wants to edit the indictment so as to eliminate a portion of the charged enterprise. Under the well settled case law set forth above, Defendant's motion should be denied.

Lark asserts that "[a]lthough the fact that Lark was removed as President and as a member of Local Teamsters Union in 1996 is relevant to the charged conspiracy, this indictment goes further by alleging that administrative action was taken by the IRB to permanently bar him from holding office." (Lark's Memorandum at p. 3). However, it is precisely the fact that Lark was barred from holding office that makes his exercise of de facto control of the union relevant to the charged conspiracy. The relevance of the IRB's permanent prohibition of Lark from being a member of the Teamsters is demonstrated by paragraph 13 of the Manner and Means Section of the RICO charge which reads as follows:

> 13. It was further part of the conspiracy that defendant CLARENCE LARK would continue to maintain and exercise influence over the operation of Teamsters Local 390, even after the IRB removed him as Teamster Local 390 President, in order to continue to maintain for himself, defendant CRENSHAW and other conspirators a source of illegal income from narcotics trafficking and extortion.

Thus Lark's permanent removal from the union is just as relevant as the fact of his removal. Indeed, it is even more relevant because a major thrust of the RICO charge relates to Lark's efforts to maintain his control over the union in the teeth of the IRB's decision removing his from office.

Defendant Lark further asserts that paragraph 8 should be struck because it would be improper for the government to introduce as substantive evidence the factual finding made by the IRB when it removed him from office. (Defendant's Memorandum at 4). However, this is the creation of an issue that does not exist. The indictment does not set forth a recitation of the reasons why the IRB removed Lark and barred him from union membership, it simply states that the IRB did so remove and bar Lark. Moreover, the United States is well aware that the IRB's factual findings would not themselves be admissible against Lark in this criminal prosecution. See Fed. R. Evd. 803(6). Indeed the undersigned has informed defense counsel that the United States would not attempt to introduce the factual findings of the IRB.

However, the nature of the IRB's investigation would be introduced in order to demonstrate the relevance and the materiality of the false statements made by Lark to the IRB. These false statements related, among other things, to the relationship between Lark and Star's choice. Thus, the conclusions of the IRB could not be introduced into evidence but the nature of their investigation would be developed through the testimony of the IRB investigators. Finally, any improper prejudice to the defendant could be addressed through a limiting instruction if one is requested by the defendant.

6

As set forth above, Lark's contention that Paragraph 8 of the indictment is surplusage and should be stricken is without merit and should be denied.

III  <u>CONCLUSION</u>

Defendant Lark's Motion to Strike Surplusage is without merit and should be denied in its entirety.

Respectfully submitted,
GUY A. LEWIS
UNITED STATES ATTORNEY

BY:

MICHAEL J. DITTOE
Assistant United States Attorney
Court ID #A5500209
500 E. Broward Blvd., Ste. 700
Ft. Lauderdale, FL 33394-3002
Tel: (954) 356-7392
Fax: (954) 356-7230

BY:

TERRENCE THOMPSON
Assistant United States Attorney
Court ID #A5500063
500 E. Broward Blvd., Ste. 700
Ft. Lauderdale, FL 33394-3002
Tel: (954) 356-7392
Fax: (954) 356-7230

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 23rd day

of April, 2001 to and sent by facsimile to Donald Bierman   counsel for Defendant Lark, the

Appellant.

Donald I. Bierman, Esq
Bierman, Shohat, Loewy & Klein, P.A.
800 Brickell Avenue, PH-2
Miami, FL 33131

(305) 358-7000
Attorney for Lark

Steve Kassner, Esq.
815 Ponce de Leon Blvd., Ste. 303
Coral Gables, FL 33134

(305) 461-2744
Attorney for Lampkin

Bruce H. Lehr, Esq.
1401 Brickell Ave., Ste. 810
Miami, FL 33131

(305) 377-1777
Attorney for Seymour

Larry Hanfield, Esq.
4770 Biscayne Blvd., Ste. 1200
Miami, FL 33137

(305) 576-1011
Attorney for Hall

Paul D. Lazarus, Esq.
800 Brickell Ave., PH-2
Miami, FL 33131

(305) 539-0606
Attorney for Crenshaw

Guy Speigelman, Esq.
28 W. Flagler St., Ste. 400
Miami, FL 33131

(305) 373-6634
Attorney for McHome

Reemberto Diaz, Esq.
1435 S. Miami Ave.
Miami, FL 33130

(305) 446-0001
Attorney for Hall

James D. Henderson, Esq.
12121 Wilshire Blvd., Ste. 1130
Los Angeles, CA 90025

(310) 478-3131
Attorney for Gallo

Martin R. Raskin, Esq.
Grove Forest Plaza, Ste. 206
2937 S.W. 27 Ave.
Miami, FL 33133

(305) 444-3400
Attorney for Gallo

William J. Cone, Jr., Esq.
514 S.E. Seventh St.
Ft. Lauderdale, FL 33301

(954) 764-0570
Attorney for Newton

MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY